UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLINTON L., SR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:24-cv-654

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed applications for DIB and SSI on March 23, 2022, alleging that he became disabled on January 17, 2022, due to fracture, tendonitis, and extra bone. (PageID.108, 117, 228–44.) Plaintiff was 41 years old at his alleged onset date and 42 years old when he filed his applications. (PageID.108.) Plaintiff had completed two years of college and had past work as a die cast machine operator, industrial cleaner, forming-roll machine operator, and metal pourer.

(PageID.65, 268.) After Plaintiff's applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge (ALJ).

On July 13, 2023, ALJ Kevin R. Himebaugh held a hearing and received testimony from Plaintiff and Shannon Smith, an impartial vocational expert (VE). (PageID.83–106.) On August 11, 2023, ALJ Himebaugh issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled from his alleged onset date through the date of the decision. (PageID.58–67.) The Appeals Council denied Plaintiff's request for review on May 9, 2024. (PageID.49–51.) Therefore, ALJ Himebaugh's August 11, 2023 ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on June 26, 2024.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the Act's insured status requirements through December 31, 2026, and had not engaged in substantial gainful activity since his alleged onset date of January 17, 2022, the ALJ found that Plaintiff suffered from severe impairments of degenerative joint disease of the bilateral shoulders and bilateral knees; plantar fasciitis; tibial tendinitis; carpal tunnel syndrome; and obesity – severe impairments that considered alone or in combination do not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.60–62.)

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except:

> he can stand and/or walk up to 4 hours out of an 8-hour workday. He can do occasional stooping, kneeling, balancing, crouching, and crawling. He can do frequent but not constant reaching, handling, and fingering. He can have no concentrated exposure to vibration and no work at unprotected heights.

(PageID.62.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as actually or generally performed. (PageID.65–66.) At step five, however, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of merchandise marker, office helper, and routing clerk, approximately 416,000 of which existed in the national economy. (PageID.66.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## **DISCUSSION**

As his basis for appeal, Plaintiff asserts that "[t]he Administrative Law Judge (ALJ) erred in crafting the residual functional capacity (RFC) using his own lay interpretation of the raw medical record and playing doctor." (ECF No. 10 at PageID.1011.) Plaintiff specifically contends that the ALJ erred by using his lay interpretation of raw medical data to support the four-hour standing/walking limitation in his RFC finding without a supporting medical opinion. The administrative record included no medical source opinion other than the prior administrative findings, which the ALJ assessed as follows:

> At the State agency initial determination in September 2022, Alyce Metoyer opined that the claimant could perform work at the light exertional level, with occasional climbing and postural movement, except for unlimited balancing, and avoiding concentrated exposure to vibration and hazards. (1A/6, 3A/6) At reconsideration in January 2023, Helene Jones, M.D. agreed with the initial limitations, but added a limitation to frequent not constant overhead reaching, handling, and fingering, bilaterally. (5A/9, 7A/9) These agency findings are somewhat persuasive, because they are generally supported by the evidence, but the record also supports more restriction on standing/walking, due to the combined effect of knee pain with plantar fasciitis and tibial tenderness. (8F/1, 5F/16) Although surgery helped

5

> improve the pain, evidenced by normal physical exam findings and milder imaging findings post-surgery, the claimant underwent two foot surgeries along with shoulder surgery, and a carpal tunnel release, all of which supports the findings at reconsideration plus a limit to four hours of standing/walking per workday. (10F/2-3) Right knee x-rays in April 2022 showed no acute osseous abnormality. (4F/1) Right shoulder x-rays were negative in June 2022. (4F/2) Bilateral ankle x-rays from February 2022 were negative as well. (4F/6) Physical exams revealed full range of motion of the right knee with crepitus, and crepitus in the right shoulder, but with full range of motion. (5F/3) He had normal sensation and 5/5 strength in the right hand, with 4/5 strength in the left hand. (Id.) In April 2023, knee x-rays and MRI showed patellofemoral compartment chondromalacia with a large area of full-thickness chondral loss, lateral patellar facet with early underlying subchondral cystic change, oblique tear of medial meniscus, diffuse thickening of the medial collateral ligament, and small leaking Baker's cyst, which supports the added limitations. (15F/38, 14F/3-4)

(PageID.65.)

Plaintiff contends that having found the State agency consultants' opinions only somewhat persuasive because the evidence warranted a standing/walking limitation, the ALJ erred in relying on his own lay opinion and interpretation of raw medical, namely, the April 19, 2023 right knee MRI. Plaintiff says that the ALJ could not have properly assessed the limitation without a medical opinion. Plaintiff relies on *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), and other decisions from a judge in this district following *Deskin*, to support his argument. The court in *Deskin* held that, "[a]s a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* at 912.

As Defendant notes, *Deskin* has been criticized by many judges within the Northern District of Ohio where the case originated, most recently in *Skibski v. Commissioner of Social Security*, No. 3:23-CV-1554, 2024 WL 3387290 (N.D. Ohio July 9, 2024), *report and*

6

*recommendation adopted*, 2024 WL 3896771 (N.D. Ohio Aug. 22, 2024). Quoting another case that rejected *Deskin*, the *Skibski* court observed:

> *Deskin* is a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law. . . . By requiring an ALJ to secure a medical opinion whenever the record does not contain such an opinion, subject to only limited exceptions, *Deskin* places a higher burden on the ALJ than the Sixth Circuit does.

*Id.* at *14 (quoting *Winans v. Comm'r of Soc. Sec.*, No. 5:22-CV-01793, 2023 WL 7622634, at *4 (N.D. Ohio Nov. 15, 2023)). Likewise, several judges in this district have declined to follow *Deskin* after concluding that it is at odds with the applicable regulations and Sixth Circuit authority. For example, in *Phillips v. Commissioner of Social Security*, No. 1:16-CV-147, 2016 WL 6802892 (W.D. Mich. Nov. 17, 2016), the court found *Deskin* at odds with the Sixth Circuit's observation in *Rudd v. Commissioner of Social Security*, 531 F. App'x 719 (6th Cir. 2013), that:

> [T]he Commissioner has final responsibility for determining an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."

*Id.* at *6–7 (quoting *Rudd*, 531 F. App'x at 728); *see also Peterson v. Comm'r of Soc. Sec.*, No. 1:16-cv-363, 2017 WL 343625, at *3 (W.D. Mich. Jan. 24, 2017); *Meyers v. Comm'r of Soc. Sec.*, No. 1:15-CV-984, 2016 WL 4974975, at *7 (W.D. Mich. Sept. 19, 2016). The undersigned has expressed the same view. *See Hodges v. Comm'r of Soc. Sec.*, No. 1:20-cv-607, 2022 WL 484446, at *6 & n.2 (W.D. Mich. Feb. 17, 2022).

It is the ALJ, not a physician, who is charged with the responsibility of determining a claimant's RFC based on the evidence as a whole. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding"). Moreover, the Sixth

7

Circuit holds that, as in this case, an ALJ may permissibly consider medical records submitted after agency consultants render their findings without obtaining an updated medial opinion. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (finding no error in failing to obtain updated medical opinion because "[t]here will always be a gap between the time the agency experts review the record and give their opinion . . . and the time the hearing decision is issued," and noting that the ALJ specifically considered the new evidence); *Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19 CV 2844, 2020 WL 7769729, at *12 (N.D. Ohio Dec. 30, 2020) ("If it can be supported for an ALJ to reject all medical opinion evidence of record and formulate an RFC based on the record as a whole, then it certainly can also be supported for an ALJ to rely (in part) on outdated medical opinions without obtaining updated opinion evidence, so long as the ALJ's ultimate decision is supported by substantial evidence.") (citing *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018), and *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009)). And as the Sixth Circuit has noted, it has "[n]o bright-line rule . . . directing that medical opinions must be the building blocks of the residual functional capacity finding;" rather, "the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). Moreover, the ALJ did not interpret raw medical data. The Sixth Circuit has held that an ALJ does not impermissibly interpret raw medical data by using a radiologist's findings to formulate a claimant's RFC. *See Rudd*, 531 F. App'x at 726–27 (concluding that the ALJ was not required to obtain a medical expert to interpret x-rays because they "had already been read and interpreted by a radiologist"); *Holland v. Comm'r of Soc. Sec.*, No. 4:13-cv-10295, 2014 WL 1118521, at *7 (E.D. Mich. 2014) ("[T]he ALJ did not improperly analyze the raw medical data of those test results, e.g., the MRI images; rather, he based his decision on the conclusions found in the test-

result summaries prepared by physicians, Drs. Sehgal and Sul."). The April 18, 2023 MRI had already been read and interpreted by a radiologist. (PageID.919–20, 979–80.) Therefore, the ALJ did not improperly rely on those imaging studies to determine a standing/walking limitation in his RFC finding. *See Giacomelli v. Berryhill*, No. 1:18CV1936, 2019 WL 2492298, at *9 (N.D. Ohio June 14, 2019) (observing that while the state agency physicians did not review an MRI, a radiologist had read and interpreted it and, thus, the ALJ did not err in relying on the "mild" and "moderate" findings in formulating the claimant's RFC). Here, the ALJ's decision shows that he properly formulated his RFC finding based on the record as a whole.

Plaintiff also contends that the ALJ failed to comply with Social Security Ruling 96-8p by not explaining his basis for including a standing/walking limitation not included in the prior administrative medical findings. This ruling provides that the ALJ should address a claimant's exertional and nonexertional capacities and also describe how the evidence supports his conclusions. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Plaintiff's argument lacks merit because the ALJ explained that the standing/walking limitation was supported "due to the combined effect of knee pain with plantar fasciitis and tibial tenderness." (PageID.65.) As support, the ALJ noted Plaintiff's two foot surgeries in March and August 2022 (PageID.681, 715), as well as evidence showing both normal and abnormal findings, including right knee x-rays from April 2022, finding no acute osseous abnormality, negative bilateral ankle x-rays from February 2022, physical examination findings from July 2022 of full range of motion with crepitus in the right knee, and the April 2023 MRI of the right knee with abnormal findings. (PageID.506, 511, 524, 919–20, and 979–80.)

As Plaintiff concedes, the "the evidence generally did support limitation" (ECF No. 10 at PageID.1025), which is exactly what the ALJ determined. The ALJ's finding that Plaintiff was

9

more limited than the State agency physicians opined does not constitute reversible error. *See Putman v. Comm'r of Soc. Sec.*, No. 2:20-cv-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) (finding "no error" where the ALJ imposed greater restrictions than opined by the state agency physicians.); *Weirauch v. Comm'r of Soc. Sec.*, No. 20-11511, 2021 WL 4497865, at *17 (E.D. Mich. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 4480473 (E.D. Mich. Sept. 30, 2021) (stating that "if anything, the ALJ's opinion was more favorable to the Plaintiff than necessary. Under these circumstances, Plaintiff has no grounds for complaint.").

Although Plaintiff does not explain the level of limitation on standing/walking he believes appropriate, he cites his hearing testimony that he could only stand up to 30 minutes before he would need to sit down. (PageID.94.) In response to questioning from Plaintiff's attorney, however, the VE testified that the jobs she identified would allow for a 30-minute sit/stand limitation, and even a more restrictive sit/stand at-will limitation. (PageID.104–05.) Plaintiff also suggests that his need to take breaks between standing and sitting would render him off-task more than ten percent of the workday which, as the ALJ testified, would be work preclusive. (PageID.104.) Plaintiff testified that he would "elevate his feet sometimes, rub it where it hurts and kind of rub the pain out." (PageID.94.) Such equivocal testimony does not establish that Plaintiff would be off task more than 10 percent of the workday or that the ALJ's standing/walking limitation was not supported by substantial evidence. Because Plaintiff failed to specify the length of the breaks he claims he requires, he fails to demonstrate that he would be off task more than ten percent of the workday. Moreover, Plaintiff cites no medical evidence supporting that he could stand for only 30 minutes, needed to alternate between standing and sitting, or required a break after going from standing to sitting. In sum, Plaintiff fails to meet his burden of showing that he is more limited than the ALJ found. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,

1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of a disability.").

In sum, the ALJ's decision is supported by substantial evidence and complies with applicable law.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: March 19, 2025     /s/ Sally J. Berens
　　　　　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge